Ennis *v.* the State.

*Judgment reversed.*

*Geo. C. Dixon* and *J. C. Hall,* for plaintiff in error.

*L. R. Reeves,* for defendant.

------—◆ ○ ◆——------

## ENNIS v. THE STATE.

Where a person in the employment of another, was entrusted with a span of horses and wagon, and while thus in charge appropriates them to his own use, the crime is embezzlement, and not larceny under the statutes of Iowa.

To constitute the offence of larceny it should appear that the goods were procured *animo furandi,* or there should have been evidence tending to show that the property was delivered to the prisoner under the influence of false, fraudulent or improper efforts.

### ERROR *to Lee District Court.*

*Opinion by* GREENE, J. Indictment for larceny against William Ennis for stealing two horses, a wagon, set of harness, and a cloak from Alfred Pope. Prisoner found guilty and sentenced to three years imprisonment.

To the proceedings below three errors are assigned: The first two are so obviously groundless that they need not be noticed. The third error alleged is, that the court refused to set aside the verdict and grant a new trial. The motion made for that purpose avers that the verdict is contrary to law, and to the evidence in the case, and to the instructions

of the court. The bill of exceptions purports to give the substance of all the evidence submitted to the jury. By this testimony the following facts are proved : About the first of April, 1850, Pope requested and hired the defendant to drive his wagon and horses from Keokuk to Montera; the defendant undertook to drive the wagon and horses and return with them to Keokuk on the same day, agreeable to the contract, but did not return. Three days after Pope went in pursuit of defendant, and found the wagon and harness under a shed at St. Francisville, Mo., and the horses in St. Louis, where the defendant was also found, on a boat bound for Cincinnati. A Mr. Martin testified that about the last of March or the first of April, 1850, he went with one Hollingsworth, who wanted to buy horses, to a man who he thinks is Alfred Pope, that he is not acquainted with Mr. Pope, that Hollingsworth told him he was going away but would be back in a few days, when he would see him again about buying the horses; that the man who he thinks is Alfred Pope told him that he also should be away from home, but that if he came he could get the horses from the defendant, Wm. Ennis, as he had authorized said Ennis to sell them, and he knew the price. Pope testified that he did not recollect the conversation sworn to by Martin. The following agreement, as to testimony, was admitted in evidence : " It is admitted that if Elizabeth Bently was here she would testify that the cloak which the said defendant is charged with stealing, was put upon the shoulders of the defendant by Pope, the owner, at the time he is charged with having stolen it. It is also admitted that John Rayney would testify, if here, that Pope, Ennis, and himself and others were present at the time Ennis got in the wagon with the cloak over his shoulders in full view of Pope and several others ; therefore it is agreed that the above statement shall be received as the testimony of said witnesses on the trial of this cause."

This is the substance of the testimony on which the

defendant was found guilty of larceny. There is no other evidence of record tending even remotely to prove any other fact or circumstance against him. Under the statute of this state, regulating crimes and punishments, we think the testimony wholly insufficient to justify a conviction for larceny, although it would fully authorize a conviction for embezzlement. A marked distinction is made between the two offences; while the one is arranged under the first, the other comes under the second class of offences. To establish the crime of larceny a "felonious stealing, taking and carrying, leading, riding or driving away the personal goods and chattles of another" must be proved. It is not always necessary to prove that the goods were taken from the actual possession of the owner without his consent. Larceny may be committed of goods obtained from him by delivery where they were procured *animo furandi*. But when goods and other valuable effects are entrusted by the owner to a clerk or servant and he converts to his use without the consent of his master, any of those articles which came into his possession by virtue of his employment, or any person to whom such goods or any valuable personal property may be delivered to be transported or carried for him, shall take and convert the same to his own use without the assent of the employer, such convertion, according to the statute, is not larceny but embezzlement, and such is shown by the evidence to be the character of the proceedings at bar. That the property was voluntarily delivered to prisoner while under the employment of the owner is not disputed, and that he appropriated the property to his own use while thus employed is equally well established by the testimony. To preserve the distinction made by the legislature between larceny and embezzlement, testimony which proves the latter offence and nothing more, should be adjudged insufficient by our courts to establish the crime of larceny; and hence we think the court below should have

granted the motion to set aside the verdict and for a new trial.

The court appears to have charged the jury correctly as to the distinction between the two offences, to have given them the statutary definition of embezzlement, and to have told them that if the facts proved showed only a commission of that offence they should not find him guilty of larceny as charged in the indictment. It is justly claimed, then, that the verdict was against law, against the evidence, and against the instructions of the court. If the evidence had even a remote tendency to show that the prisoner obtained the property by the consent and the delivery of the owner under false, fraudulent or improper efforts, or that he had otherwise obtained the property without having been employed by the owner to take charge of it, the verdict could not be disturbed. But the offence proved is so distinctly characterized from the offence charged that we think the judgment should be arrested and the prisoner discharged.

Judgment reversed.

*T. W. Clagett*, for the prisoner.

*G. J. McFarland*, for the State.